IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRIS L. EDWARDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-791-C |
| | ) |
| STATE OF OKLAHOMA ex rel. | ) |
| THE BUREAU OF NARCOTICS | ) |
| AND DANGEROUS DRUGS | ) |
| CONTROL, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

Plaintiff filed this case alleging a Title VII, 42 U.S.C. §§ 2000e et seq., violation occurred when the Bureau of Narcotics and Dangerous Drugs Control ("OBN") passed him over for a promotion, allegedly due to discrimination. OBN filed its Amended Motion for Summary Judgment (Dkt. No. 37) and Plaintiff has responded.* The Motion is now at issue.

The standard for summary judgment is well established. Summary judgment may only be granted if the evidence of record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson

---

* Due to Defendant's amendment, the arguments found in Defendant's Motion for Summary Judgment (Dkt. No. 32) will be stricken from the record, however, the Court and the parties refer to its exhibits.

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth specific facts outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(c). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In August 2014, the OBN had an opening for the position of Agent in Charge ("AIC") of the Diversion Unit. Director Darrell Weaver interviewed six people for the position, including Chris Edwards, an African American man, and Brian Veazey, who is of Native American and Hispanic descent. Weaver selected Veazey for the position and Plaintiff alleges Weaver knew before the interviews began who he wanted to fill the position, and that plan was at least partially based on racial discrimination. As will be discussed below, the facts are disputed regarding Weaver's motivations for the selection, the applicants' qualifications, and the OBN's hiring history.

<center>I: McDonnell Douglas Standard</center>

The Supreme Court outlined the burden-shifting standard of proof applicable to Title VII cases in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The McDonnell Douglas standard requires a plaintiff bringing a failure-to-promote claim to establish the prima facie case, showing: "(1) []he was a member of a protected class; (2) []he applied for and was qualified for the position; (3) despite being qualified []he was rejected; and (4) after []he was rejected, the position was filled." Jones v. Barnhart, 349 F.3d 1260, 1266 (10th Cir.

2003) (citation omitted). Then, if the plaintiff successfully makes out a prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action." Id. (citation omitted). This creates a rebuttable presumption "that the defendant unlawfully discriminated against [the plaintiff]." Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999) (citation omitted). Finally, "[i]f the defendant is able to articulate a valid reason, the plaintiff can avoid summary judgment only if []he is able to show that a genuine dispute of material fact exists as to whether the defendant's articulated reason was pretextual." Id. (citation omitted).

## II: Prima Facie Case

First, a plaintiff must establish a prima facie case, where only an "inference of discrimination" is sufficient for a plaintiff to bear the burden of proof. EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1193 (10th Cir. 2000). The Tenth Circuit has noted that this portion of the McDonnell Douglas test "is not onerous." Orr v. City of Albuquerque, 417 F.3d 1144, 1152 (10th Cir. 2005) (citation omitted). Plaintiff argues he has met this burden by showing all four prongs of the prima facie case, and Defendant argues Plaintiff failed to satisfy the third factor under the more general description found in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, (1981) (stating "[t]he plaintiff must prove by a preponderance of the evidence that []he applied for an available position for which []he was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination"). The Tenth Circuit has held that the traditional McDonnell Douglas four-prong test provides "more structure and guidance," and when all

3

four prongs are shown, they will "'give rise to an inference of discrimination' . . . and thus satisfy the more generalized third factor" stated in Burdine. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1227 n.6 (10th Cir. 2000).

Accordingly, the Court will apply the four-prong analysis. It is not disputed that Plaintiff is a member of a protected class as an African American. (Pl.'s Resp. to Mot. Summ. J., Dkt. No. 41, p. 20.) Defendant also admitted Plaintiff applied for the AIC position, was rejected, and after the rejection, OBN filled the position. Id. Therefore, the remaining question for analysis is whether Plaintiff was qualified for the AIC position.

The vacancy announcement for the AIC position states the rank requirement is Agent III or above and the applicant must have a bachelor's degree and three years' experience in law enforcement. (Dkt. No. 32-6, p. 1.) Other requirements include the ability to:

> Exhibit knowledge of agency goals, missions, policies, and procedures; Demonstrate knowledge of public administration, prescription monitoring program, analytical applications and law enforcement safety; Pose [sic] the ability to plan, coordinate and evaluate the activities of multiple agents engaged in a broad range of functions; Use cognitive abilities to interpret, analyze, and resolve highly complex administration and personnel problems.

Id. Plaintiff argues he was qualified for the position, pointing to Weaver's deposition testimony where he states:

> Q: Did you believe Chris [Edwards] was qualified for the job, even if he wasn't necessarily the best qualified?
> A: If he was not qualified, he would not have got an interview.
> . . .
> Q: So you do believe that Chris Edwards was qualified for the position?
> A: Yes.
> Q: You believed that at the time?
> A: Yes.

4

> Q: And you believe that today?
> A: Yes.

(Dkt. No. 41-4, p. 4). Plaintiff obtained his bachelor's degree and had been working at OBN for more than eighteen years when he was interviewed for the AIC position. (Pl.'s Resp. to Mot. Summ. J., Dkt. No. 41, p. 6.)

The Tenth Circuit has said "[t]he relevant inquiry at the prima facie stage is not whether an employee or potential employee is able to meet all the objective criteria adopted by the employer, but whether the employee has introduced some evidence that []he possesses the objective qualifications necessary to perform the job sought." Horizon, 220 F.3d at 1193 (emphasis omitted). Defendant makes the argument that Plaintiff was less qualified than Veazey, but does not persuade the Court that Plaintiff was without the necessary objective qualifications. The Court finds that Plaintiff has borne his prima facie burden.

## III: Defendant's Nondiscriminatory Reason

After a plaintiff makes a prima facie showing, the burden shifts back to the employer to "explain its actions against the plaintiff in terms that are not facially prohibited by Title VII." EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1317 (10th Cir. 1992) (citations omitted). Defendant asserts two reasons for hiring Veazey: he was more qualified for the position than Edwards, and Edwards underperformed during the interview. OBN explains that Veazey was chosen because he "had a proven track record leading other Units as the Human Trafficking AAIC for two (2) years," as well as outlining his other qualifications. (Def.'s Am. Mot. Summ. J., Dkt. No. 37, p. 19.) OBN states Edwards' interview responses were disappointing

5

and he had displayed a lack of productivity, thereby making Plaintiff the less desirable choice. Id. at 20. Plaintiff concedes that Defendant successfully presented legitimate, nondiscriminatory reasons for the employment decision to hire Veazey rather than Edwards. (Pl.'s Resp. to Mot. Summ. J., Dkt. No. 41, p. 24.) Accordingly, the Court will accept this proposition along with Defendant's argument as facially nondiscriminatory reasons for declining to hire Plaintiff for the AIC position.

## IV: Plaintiff's Evidence of Pretext

The final burden shift requires the plaintiff to "show that a genuine dispute of material fact exists as to whether the defendant's articulated reason was pretextual." Perry, 199 F.3d at 1135 (citation omitted). A plaintiff can establish pretext through "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Jones, 349 F.3d at 1266 (citation and internal quotation marks omitted). Examples of pretext evidence may include "'prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria.'" Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1217 (10th Cir. 2002) (citation omitted).

A proffered legitimate reason for declining to promote Edwards is that he is less qualified than Veazey for the position. However, Plaintiff points to evidence that Weaver had preselected individuals for promotion in the past, thereby making qualifications


6

irrelevant. Evidence is present showing that twice in 2014 Weaver requested funding to send a specific employee to "Chief School" when the employee had not yet reached the position of chief. The employees in question, Agents Stewart and Woodrow, soon interviewed for chief positions and Weaver selected each of them. (Pl.'s Resp. to Mot. for Summ. J., Dkt. No. 41, pp. 7-8.) In regard to the AIC position in this case, Plaintiff argues that given the past evidence of preselection, a jury could infer the same occurred when Weaver and Veazey traveled to Philadelphia just prior to the AIC interview to attend a conference and social events.

Plaintiff offers evidence that Veazey may not have been the best candidate for the position. He shows that Veazey was demoted in 2006 due to an inappropriate sexual relationship with a confidential informant. In contrast, Edwards has never been disciplined. Plaintiff argues the offered reason of his poor interview should not be accepted because both candidates performed poorly during their interviews. Veazey self-graded his interview at 70%, and Edwards admitted that he "froze."

Plaintiff argues the jury could infer Weaver is not a truthful person and was acting in his own self-interest. At the time the AIC interviews were taking place, William Diaz, an Hispanic male, had filed a discrimination claim against the OBN. Plaintiff alleges that Weaver preselected Veazey for the AIC position because he is also Hispanic. During the jury trial resulting from Diaz's complaint, Weaver's co-worker who had spent 26-27 years with Weaver, testified that Weaver "tends to frame things in the light that best suits him and

sometimes the truth gets lost in there a little bit or at least massaged, if you will." (Diaz Tr. Trans., Dkt. No. 41-6, p. 40.)

Plaintiff asserts that Weaver expected greater scrutiny of his hiring practices due to the pending discrimination claims and used the AIC interview process to build a negative record against Edwards in order to support his preselection choice. He points to Weaver's reliance on the negative opinion of Edwards' indirect supervisor, rather than the "exceeds-standards" ratings given by his direct supervisors. Plaintiff shows that two other agents, Veazey and Mooneyham, made negative comments about Edwards during their own interviews; both were promoted shortly thereafter, while Edwards was not.

Defendant argues that small differences in qualifications cannot give rise to the inference of pretext. Indeed, the Tenth Circuit stated "we will not draw that inference based upon 'minor differences between plaintiff's qualifications and those of successful applicants'; rather, there must be 'an overwhelming merit disparity.'" Conroy v. Vilsack, 707 F.3d 1163, 1172 (10th Cir. 2013) (citations omitted). The qualification differences between Edwards and Veazey are not "overwhelming," but the Court also relies upon the other evidence of disturbing procedural practices: the subjective nature of Weaver accepting other applicants' opinions of Edwards during their own competing interviews, a pattern of preselection, and the pending discrimination claims against the OBN during the time at issue.

Plaintiff has combatted Defendant's reasons with "evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda." Johnson v. Weld Cnty., Colo., 594 F.3d 1202, 1211 (10th Cir.

2010). Thus, the Court concludes Plaintiff has produced evidence from which a reasonable inference could be drawn that OBN's proffered reasons were pretextual. Summary judgment would be improper.

## CONCLUSION

For the reasons stated herein, the Court finds that Defendant's Amended Motion for Summary Judgment (Dkt. No. 37) is DENIED. Defendant's Motion for Summary Judgment (Dkt. No. 32) is stricken as MOOT.

IT IS SO ORDERED this 30th day of January, 2017.

*[signature]*
ROBIN J. CAUTHRON
United States District Judge