## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHRIS L. EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-791-C |
| | ) | |
| STATE OF OKLAHOMA *ex rel.* | ) | |
| THE BUREAU OF NARCOTICS | ) | |
| AND DANGEROUS DRUGS | ) | |
| CONTROL, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S TRIAL BRIEF

Plaintiff Chris L. Edwards submits the following Trial Brief to the Court in accordance with the Court's Order dated November 23, 2016 [Doc. 35]. Edwards would show the Court as follows:

### Factual Background

Plaintiff Chris Edwards ("Edwards") claims in this suit that his employer, the State of Oklahoma ex rel. the Bureau of Narcotics and Dangerous Drugs Control ("OBN"), discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended. Edwards claims that OBN discriminated against him when it failed to promote him to the position of Agent in Charge of the Diversion Unit in August 2014. Edwards seeks lost wages and benefits, compensatory damages, front pay in lieu of the equitable remedy of promotion, a reasonable attorney fee, costs, and pre-judgment and post-judgment interest.

Edwards joined OBN as a Narcotic Agent I on August 19, 1996. He promoted to the

position of Narcotic Agent II on September 1, 1997, and then promoted to the position of Agent III, also known as a "Senior Agent," on October 1, 1999. Since that time, Edwards has excelled as a Senior Agent. He has developed a well-rounded experience in multiple OBN units, with his supervisors noting that he is an "intelligent, well spoken, and experienced agent" who has "worked in all sections of OBNDD and demonstrated [an] ability to function well in each." He has been described as an impeccable agent, and he has been selected for many additional duties within the OBN workplace. Edwards has been a member of the OBN Honor Guard, he is a Rappel Master, a Physical Fitness Instructor, a Polygraph Examiner, and, among other things, an EMT. In short, he has excelled as an agent throughout his lengthy tenure at OBN.

Edwards has also received recognition outside the agency. He often assists other agencies in his work as a polygraph examiner, and as one of his supervisors has noted, "[h]e has demonstrated the ability to not only conduct sensitive examinations for other agencies, but often concludes these examinations by obtaining admissions of guilt crucial to case investigations." Edwards is and has at all times been an exceptional employee who goes above and beyond the call of duty.

The only blemish in Edwards' career is that he is not a white male. He is African American, and the former Director of OBN, Darrell Weaver, harbored intentionally discriminatory attitudes toward minorities in the workplace. Weaver's discrimination is palpable in the evidence that will be presented at trial.

First, Weaver is not a truthful person and his reason for rejecting Edwards is a pretext for intentional race discrimination. Larry Carter, a former Agent in Charge, worked

alongside Weaver for nearly thirty years. He has testified that Weaver is the kind of person who will massage the truth to benefit himself.

Second, Weaver has testified that the reason he rejected Chris Edwards is that Edwards performed poorly during the interview process. However, the evidence shows that Weaver pre-selected candidates and that the interview was a meaningless process. In addition, the successful candidate graded himself as having only earned a "C" in the interview process. The successful candidate also has a history of poor decision making within the OBN, in that he committed a cardinal sin of OBN agents by having a sexual relationship with a confidential informant. Edwards has never been disciplined.

Third, the interview process itself was subject to significant procedural irregularities and subjectivity, where Weaver elicited negative information from other candidates about Chris Edwards. This contradicts Weaver's testimony that he wanted team-first leaders that had integrity.

Fourth, and amongst other evidence, there is significant evidence that Weaver has engaged in discriminatory decision-making in the past. For example, Weaver discriminated against William Diaz on the basis of his race/national origin in a promotional process that occurred only a few months before the one at issue here. Moreover, on March 26, 2010, Weaver opened an Agent in Charge position over the Wire Unit. However, he only opened the position up for lateral transfers, thereby exclude Edwards and several other minority candidates from even competing for the position. Chief Agent Cindy Cunningham testified that she went to Director Weaver at the time and complained that it was not proper for him to take this action, especially since the individual who ultimately obtained the job (Mike

Snowden) did not have as much experience in the Wire Unit as Edwards and the other candidates. Nor did Snowden have a college degree, which Weaver has testified was of critical importance to him. Edwards, on the other hand, did have a degree at the time.

There are other instances of pretext that Edwards will present at trial as well. There is convincing and persuasive evidence that Edward's race served as a significant and motivating factor in Darrell Weaver's decision not to promote Edwards in August 2014.

As a result of OBN's intentional and unlawful discrimination against Edwards, he suffered economic loss and non-economic loss. Edwards is seeking an award of monetary damages against OBN because of its unlawful discrimination.

<u>Legal Basis for Edwards' Claim</u>

Edwards' claim arises under Title VII of the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. § 2000e-2(a) ("Title VII"). Title VII prohibits intentional discrimination in certain employment decisions that is based on, among other protected characteristics, the race of the employee. In a claim based on the failure to promote, Edwards must prove, by a preponderance of the evidence, that his race was a motivating factor in OBN's decision to promote another candidate instead of him to the position of Agent in Charge of the Diversion Unit in or around July 2014.

The causation requirement of Title VII disparate treatment claims "relaxes" the traditional but-for standard and "prohibit[s] even making a protected characteristic a 'motivating factor' in an employment decision." <u>E.E.O.C. v. Abercrombie & Fitch Stores, Inc.</u>, 135 S.Ct. 2028, 2032 (2015); <u>see also</u> <u>Univ. of Texas S.W. Med. Ctr. v. Nassar</u>, 133 S.Ct. 2517, 2526 (2013) (noting that the disparate treatment provision uses "a lessened

causation standard"). Therefore, Edwards does not have to prove that his race was the "but-for" cause of OBN's employment decision. Instead, he only has to prove that his race was a motivating factor in the employment decision.

Edwards intends to prove his claim by presenting evidence of pretext. In <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000), the Supreme Court held:

> In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.' Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation.

<u>Id.</u> at 147.

The circumstances of this case make it appropriate for the jury to infer that OBN is dissembling to cover up a discriminatory purpose. Edwards contends that the evidence will prove OBN lied about the reasons that he did not get the job, which is a material fact in this case. Edwards also contends that the evidence will prove the sole decision-maker, Darrell Weaver, is prejudiced against minorities in both explicit and implicit ways.

### Discrimination Is Subtle and the Courts Recognize The Broad Admission of Relevant Evidence

"[I]t is abundantly clear that Title VII tolerates no racial discrimination, subtle or otherwise." <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 801 (1973). "Anti-discrimination laws and lawsuits have 'educated' would-be violators such that extreme manifestations of discrimination are thankfully rare. . . . Regrettably, however, this in no way suggests that discrimination based upon an individual's race, gender, or age is near an

end." <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1081-82 (3d Cir. 1996). "Courts today must be increasingly vigilant in their efforts to ensure that prohibited discrimination is not approved under the auspices of legitimate conduct." <u>Id.</u> As the Seventh Circuit has stated:

> Proof of such discrimination is always difficult. Defendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it; and because most employment decisions involve an element of discretion, alternative hypotheses (including that of simple mistake) will always be possible and often plausible. . . . A plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled by evidentiary rulings that keep out probative evidence because of crabbed notions of relevance or excessive mistrust of juries.

<u>Riordan v. Kempiners</u>, 831 F.2d 690, 697-98 (7th Cir. 1987).

Indeed, Congress explicitly intended Title VII to be a broad, remedial statute that is interpreted liberally. <u>See, e.g.</u>, <u>Gonzalez-Aller Balseyro v. GTE Lenkurt, Inc.</u>, 702 F.2d 857, 859 (10th Cir. 1983). The Court should make evidentiary rulings and decisions at the time of trial with this remedial framework in mind. <u>See also</u> <u>Cummings v. Standard Register Co.</u>, 265 F.3d 56, 63 (1st Cir. 2001) (recognizing that "discrimination is often subtle and pervasive").

## Evidence of Other Acts of Discrimination Is Relevant and Admissible Under FRE 404(b)

In this case, Edwards intends to offer evidence of other instances of discrimination perpetrated by Darrell Weaver against other employees. This evidence includes Weaver's testimony that the Office of Personnel Management told him that the OBN had "too many Hispanics, per capita," and would not allow him to hire any more Hispanics. It also includes Weaver's discriminatory lateral transfer of Michael Snowden in 2010 to prevent a group

6

of qualified minorities from even competing for the position (a group that included Edwards), as well as his discrimination against William Diaz in the promotional process.

This evidence is relevant to Darrell Weaver's motive, intent, and state of mind when he made the decision to reject Edwards in August 2014. Indeed, the Tenth Circuit has held that "[a]s a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issues of the employer's discriminatory intent." Spulak v. K Mart Corp., 894 F.2d 1150, 1156 (10th Cir. 1990); see also Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1217 (10th Cir. 2002) ("evidence of pretext may include . . . prior treatment of plaintiff [and] the employer's policy and practice regarding minority employment.").

This is true even if the evidence does not relate directly to the employment decision at issue. See, e.g., Plotke v. White, 405 F.3d 1092, 1107 (10th Cir. 2005). "The Supreme Court has emphasized that courts should not reject a plaintiff's evidence of additional circumstantial gender-based comments and treatment simply because they were not made in the direct context of [the adverse employment action against the plaintiff]." Id. (internal quotation mark omitted).

The evidence of other acts of discrimination against other employees has a clear nexus to the promotional decision at issue in this case. The other acts were all perpetrated by the same decision-maker (Darrell Weaver), in the context of promotion and hiring of minority, non-white candidates. This connection satisfies the standard set out by the Tenth Circuit in determining when this "other acts" evidence is relevant to a disparate treatment claim.

## Edwards Does Not Have To Prove That OBN Promoted a
## White Candidate To Prevail

OBN has repeatedly made reference to the fact that the successful candidate in this promotion was also a minority. OBN filed a motion to dismiss on this issue, which was denied, and OBN has questioned Edwards about his belief as to the other candidates' race/national origin in deposition and at the Diaz trial. However, Edwards does not have to prove that the successful candidate was a nonminority, and his subjective belief about the successful candidate's race/national origin is wholly irrelevant.

In the seminal case of Perry v. Woodward, 199 F.3d 1126 (10th Cir. 1999), the plaintiff, a Hispanic woman, was terminated and replaced by another Hispanic woman. Id. at 1131 (noting that the individual who replaced the plaintiff was Hispanic); see also id. at 1135 (noting that the plaintiff was also Hispanic). The district court granted the defendant's motion for summary judgment because, among other reasons, the court found the plaintiff had failed to meet the fourth element of the *McDonnell-Douglas* test, since the plaintiff's replacement was a minority. Id. at 1130. On appeal, the defendants argued that the plaintiff "must show that the individual who was hired to replace her was not Hispanic." Id. at 1135. The Tenth Circuit rejected this argument and reversed the district court's order granting summary judgment.

The *Perry* Court provided an in-depth analysis of this issue. The Court explained that "the inflexible rule advocated by Defendants is untenable because it could result in the dismissal of meritorious claims." Id. at 1137. For example:

> Defendants' rule would preclude suits against employers who replace a
> terminated employee with an individual who shares her protected attribute

only in an attempt to avert a lawsuit. It would preclude suits by employers who hire and fire minority employees in an attempt to prevent them from vesting in employment benefits or developing a track record to qualify for promotion. It would also preclude a suit against an employer who terminates a woman it negatively perceives as a 'feminist' and replaces her with a woman who is willing to be subordinate to her male co-workers or replaces an African–American with an African–American who is perceived to 'know his place.' Although each of these situations involves wrongfully-motivated terminations, under the rule advocated by the Defendants, the terminated employee would be unable to meet the prima facie burden. **Such a result is unacceptable.**

*Id.* (emphasis added).

In this Court's Order denying OBN's motion to dismiss on this issue [Doc. 12], the Court recognized that there is "a very important policy argument as to why non-minority replacement is not required," citing <u>Perry</u>. Edwards does not have to prove that OBN promoted a non-minority in order to prevail on his Title VII claim.

Edwards has filed a motion in limine relating to his subjective belief about Brian Veazey's race/national origin, which is immaterial and irrelevant to this case.

Additionally, Edwards is entitled to a jury instruction stating that he does not have to prove a Caucasian was selected for the position. Edwards anticipates that OBN will imply, or perhaps state explicitly, that OBN did not discriminate **because** it selected a minority candidate for the position. The jury may be confused into believing that Edwards must show he was passed over by a white candidate, when that is not the law. Therefore, his request for such a jury instruction is necessary in the unique context of this case.

### Requested Jury Instruction on Pretext

Edwards has included a proposed jury instruction on pretext in this case. It is Edwards' contention that an instruction on pretext must be given in this case, or it will

result in reversible error pursuant to the case Townsend v. Lumbermens Mutual Casualty Co., 294 F.3d 1232 (10th Cir. 2002).

Generally speaking, "the *McDonnell Douglas* burden-shifting analysis drops away entirely once the case has gone to trial." Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1228 fn. 7 (10th Cir. 2000). However, in Townsend, the Tenth Circuit held that a pretext instruction is required in certain circumstances. Specifically, the Tenth Circuit held as follows:

> We do not hold that a pretext instruction is always required, but rather that it is required where, as here, a rational finder of fact could reasonably find the defendant's explanation false and could 'infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.'

Townsend, 294 F.3d at 1241 (citation omitted).

In Townsend, the trial court denied the plaintiff's motion for a new trial, and the Tenth Circuit reversed because the plaintiff was entitled to a pretext instruction. The plaintiff "presented evidence from which the jury could reasonably have found that [the employer's] stated reasons for demoting and firing [the plaintiff] were pretextual." Id. at 1242-43. The Court, quoting the Third Circuit, explained that "[i]t is difficult to understand what end is served by reversing the grant of summary judgment for the employer on the ground that the jury is entitled to infer discrimination from pretext . . . if the jurors are never informed that they may do so." Id. at 1238 (citation omitted). Based on this authority, a pretext instruction is required if a jury can reasonably conclude the employer's stated reason for an adverse employment action is pretextual.

The Court's order denying summary judgment is dispositive of this issue and

establishes that a pretext instruction must be given in this case. The Court found that "Plaintiff has produced evidence from which a reasonable inference could be drawn that OBN's proffered reasons were pretextual." [Doc. 43, Order at p. 9]. Accordingly, under Townsend, a pretext instruction must be given since a rational jury could find that OBN's stated reasons for rejecting Edwards were pretextual.

**Plaintiff's Counsel Is Entitled to Ask Leading Questions of Adverse Witnesses**

As this Court is well aware, leading questions should not be used on the direct examination of a witness, but are ordinarily permitted on cross-examination. See Fed. R. Evid. 611(c). Plaintiff's counsel may call some witnesses as adverse or hostile witnesses. When a party calls (a) a hostile witness, (b) an adverse party, or (c) a witness identified with an adverse party, leading questions may be used on direct examination. See id.; accord Fed. R. Evid. 611(c) advisory committee notes; see also United States v. Mora-Higuera, 269 F.3d 905, 912 (8th Cir. 2011); Elgabri v. Lekas, 964 F.2d 1255, 1260 (1st Cir. 1992) (noting that a plaintiff may use leading questions on the direct examination of an adverse witness). The reverse is also true: When the adverse party's counsel is questioning that witness on "cross-examination," leading questions should not be permitted to suggest and lead a party's own witness. See Stahl v. Sun Microsystems, Inc., 775 F.Supp. 1397, 1398-1399 (D. Colo. 1991) (noting that leading questions should not ordinarily be used by counsel in examining his or her own client or witness). Therefore, in the event counsel for Plaintiff calls an adverse witness in Plaintiff's case in chief, counsel should be allowed to ask leading questions, and counsel for Defendant should not be allowed to use leading questions during that examination.

Dated this 20th day of March, 2017.

WARD & GLASS, L.L.P.

/s/ Barrett T. Bowers
Stanley M. Ward, OBA#9351
Woodrow K. Glass, OBA#15690
R. Ben Houston, OBA#14751
Brent L. Neighbors, OBA#15910
Barrett T. Bowers, OBA#30493
Bryan B. Young, OBA#31434
1601 36th Ave. NW, Ste. 100
Norman, Oklahoma 73072
(405) 360-9700
(405) 360-7902 (fax)
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that on this 20th day of March, 2017, a true and correct copy of the above has been delivered via ECF to all attorneys of record.


Susan Werner
Marie Schuble

/s/Barrett T. Bowers